# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| BOUSASAVANH PHALAKHONE, | No. C12-4105-MWB |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

_____

Plaintiff Bousasavanh Phalakhone seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Phalakhone contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he is not disabled. For the reasons that follow, I recommend the decision be reversed and remanded for further proceedings.

### *Background*

Phalakhone was born in 1968. AR 36. He has a third grade education from Laos and he came to the United States in 1984. AR 37, 42. His past relevant work was as a meat cutter/boner and laborer. AR 292, 297. Phalakhone protectively filed for DIB and SSI on July 1, 2010, alleging disability due to back pain with an onset date of December 31, 2008. AR 228, 232. His claims were denied initially and on reconsideration. AR 81-84. Phalakhone requested a hearing before an Administrative

Law Judge (ALJ). AR 100-01. On November 4, 2011, ALJ Eric Basse held a hearing via video conference during which Phalakhone and a vocational expert (VE) testified. AR 31-80. Due to technical difficulties, another hearing was held on February 1, 2012, during which Phalakhone and another VE testified. AR 31-54.

On April 27, 2012, the ALJ issued a decision finding Phalakhone not disabled since December 31, 2008. AR 14-24. Phalakhone sought review of this decision by the Appeals Council, which denied review on October 4, 2012. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On November 28, 2012, Phalakhone filed a complaint in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

### *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's

work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the

Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *Summary of ALJ's Decision*

The ALJ made the following findings:

    (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

    (2)    The claimant has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    (3)    The claimant has the following severe impairments: syndrome of back pain of uncertain etiology; and history of cervical strain (20 CFR 404.1520(c) and 416.920(c)).

    (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: he can only occasionally climb, balance, stoop, kneel, crouch, and crawl; in addition, there should be no requirement to read or write reports or instructions.

    (6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)   The claimant was born on January 27, 1968 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)   The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 404.1564 and 416.964).

(9)   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10)  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)  The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 16-24.

After finding that Phalakhone had not engaged in any substantial work activity, the ALJ found at Step Two that Phalakhone had severe impairments of "syndrome of back pain of uncertain etiology; and history of cervical strain." AR 16. He considered the medical findings to be inadequate to support either condition as a severe impairment, but because Phalakhone's allegations of pain had been accepted and treated by medical sources, he found the impairments could be considered "severe" under the regulations. AR 17. At Step Three, the ALJ found Phalakhone's impairments did not meet or equal one of the listed impairments when considered singly and in combination.

The ALJ then proceeded to Step Four by analyzing Phalakhone's RFC. He found that Phalakhone had the RFC to perform sedentary work except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl and should not be

required to read or write reports and instructions. Beginning with a review of the medical evidence, the ALJ noted that Phalakhone reported a fall at work in 2009,[1] which resulted in a back injury and residual pain. AR 17. In February 2009, imaging revealed a normal lumbar spine. At a follow-up for back pain in June 2010, providers at University of Iowa Hospitals and Clinics (UIHC) indicated that outside x-rays showed no abnormality. AR 18. An examination at that time revealed stiffness in the right thigh and low back pain. The examiner did not provide a diagnosis at that time, but thought the pain was musculoskeletal without radiculopathy. She prescribed medication and instructed Phalakhone to apply ice. *Id.*

Phalakhone went to the emergency room in March 2010 with complaints of neck discomfort after he was rear-ended in a motor vehicle accident. The examination revealed tenderness to palpation at the neck and an x-ray of the neck and cervical spine revealed no acute fracture, subluxation or abnormal soft tissue swelling. *Id.* The provider found Phalakhone was able to sit up and move his head without any difficulty, had good range of motion of the cervical spine and flexion, extension and rotation to the right and left could be performed without difficulty. *Id.* The ALJ pointed out that the examination did not indicate Phalakhone was experiencing any low back pain.

In late March 2010, Phalakhone was seen by a different provider for examination and physical therapy. This time he had difficulty with flexion, extension and bending exercises and range of motion exercises of the cervical spine produced pain. He had significant limitations with shoulder range of motion and minimal limitations with forward flexion and bilateral rotation, although both resulted in increased pain at end range. The physical therapist noted it was difficult to tell if Phalakhone was providing maximal effort with manual muscle testing and he was unsure whether communication problems, pain or weakness was the primary factor in

---

[1] Phalakhone alleged his back was injured at work in December 2008. AR 67, 237, 538.

his strength findings. *Id.* Phalakhone continued participating in physical therapy once a week for two months and his pain and range of motion improved during this time.

A physician's assistant completed a Medical Incapacity Report in December 2010 in which he indicated Phalakhone should not lift more than ten pounds and needed to avoid bending or stooping. *Id.* The ALJ noted that a doctor found Phalakhone did not have any work restrictions in January 2011.[2] AR 18-19. The ALJ gave the physician's assistant's opinion little weight because he was a non-acceptable medical source and gave great weight to the doctor's opinion.

In January 2011, Phalakhone continued to be seen for low back pain. He was prescribed Vicodin, but said it provided only short term relief. AR 19. Clinical notes reported normal MRI and x-rays. One provider commented on the fact that a urinalysis had come back negative for opiates even though Phalakhone reported taking his pain medication regularly. *Id.* Phalakhone denied selling his pain medication, but was informed he would no longer be prescribed narcotic pain medication from that provider. *Id.*

Sunil Bansal, M.D., completed a medical examination in June 2011 and reviewed Phalakhone's other medical records. His examination revealed tenderness in the lower lumbar area and a positive straight leg raise on the right side. *Id.* There was also tenderness at his hip and pain with internal and external rotation of the hip. He noted adequate range of motion was hard to obtain but there was full range of motion with flexion and extension. There was also loss of sensory discrimination in the lateral aspects of the right upper leg. He diagnosed Phalakhone with right hip bursitis with pain down the external aspect of the right leg and prescribed medication. For purposes of Phalakhone's work compensation claim, he concluded Phalakhone qualified for 7% whole person impairment for his back and 3% whole person impairment for his right

---

[2] The ALJ mistakenly referred to the author of this report as a doctor. This note was actually written by the same physician's assistant who completed the Medical Incapacity Report, although it was signed by a supervising doctor two days later. *See* AR 431, 475-77.

hip.  *Id.*  He also assigned limitations of no lifting greater than 40 pounds and to avoid frequent bending, squatting, twisting or lifting.  He also could not stand or walk more than two hours in an eight-hour workday.  The ALJ gave this opinion great weight based on "the rather subjective clinical findings, objective analysis, and consistency of his opinions with the record of evidence," but also noted that Dr. Bansal had observed some symptom magnification with testing.  *Id.*

In November 2011, Phalakhone complained that his pain medication was not helping and requested hydrocodone.  The ALJ noted that Phalakhone had previously reported in January 2011 that hydrocodone was not helping and had thrown it away.  Because Phalakhone was accused of selling his narcotic pain medications, he was prescribed Neurontin instead.  AR 20.

Dr. Bansal provided a supplemental opinion in January 2012, and included additional limitations of no sitting for longer than 30 minutes, frequent unscheduled breaks of 10 to 15 minutes to stretch and walk to relieve pain and the need to frequently change positions if required to sit for long periods of time.  *Id.*  He also noted that it was likely Phalakhone would have multiple work absences given the extent of his pain pathology.  Dr. Bansal stated Phalakhone's situation was compounded by the fact that he had lumbar disc and right hip pathology.  The ALJ gave very little weight to this additional opinion because it had been several months since Dr. Bansal had seen or evaluated Phalakhone and the additional limitations were not supported by the entire longitudinal record of evidence and were specifically inconsistent with the normal MRI and x-rays.  *Id.*

Finally, the ALJ evaluated the opinion of Debra Reeg, ANP-BC, who evaluated Phalakhone in March 2012 at the request of Disability Determination Services (DDS).  She interviewed Phalakhone and performed a physical examination and range of motion testing.  Phalakhone rated his pain as nine out of ten on a pain scale and said the only thing that provided relief was to lie down.  *Id.*  He said he could only sit for 10 to 15 minutes at a time, stand for five minutes and walk for one block if using his cane.  The

9

examination revealed decreased flexion, extension and lateral flexion of the back and positive straight leg testing bilaterally. Range of motion of the knees revealed decreased flexion. Lower extremity strength was three out of five on the right and five out of five on the left. *Id.*

In Nurse Reeg's opinion, Phalakhone could lift and carry 10 pounds occasionally, sit for two hours in an eight-hour workday, stand for one hour in an eight-hour workday and walk for one hour in an eight-hour workday. Phalakhone would need to lie down for the remainder of the workday. *Id.* She found he could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds and could only occasionally balance, stoop, kneel, crouch and crawl. *Id.* She also found Phalakhone needed to avoid hazardous working conditions, required the use of a cane and was unable to drive a car due to his right leg weakness. *Id.*

The ALJ gave Reeg's opinion very little weight, stating that she was a non-acceptable medical source and her opinions were inconsistent with the record of evidence. Specifically, he noted her assessment was not supported by the normal imaging and there were no definitive findings of an impairment that would cause the limitations she provided. AR 21. He also noted that the record demonstrated Phalakhone could drive as he was driving when he was rear-ended in March 2010[3] and he drove from Sioux City to Iowa City in April and June 2010 for appointments at UIHC.

The ALJ then considered Phalakhone's credibility using the *Polaski* factors and Social Security Ruling 96-7p. *Id.* He discredited the severity of Phalakhone's daily activities as alleged because they could not be objectively verified with any reasonable degree of certainty and even if his activities were that limited, it was difficult to attribute that degree of limitation to his medical condition rather than other reasons given the weak medical evidence and other factors. *Id.* The ALJ also found

---

[3] Phalakhone points out that he was the passenger in that accident, which is noted in the EMS report. AR 406.

Phalakhone's credibility was eroded because he had been inconsistent with his ability or inability to speak and understand English. To "give him the benefit of any doubt" the ALJ included a limitation to eliminate jobs that required reading or writing reports. AR 22. The ALJ further discredited Phalakhone based on (a) clinical notes suggesting Phalakhone was malingering or misrepresenting his pain, (b) the fact that Phalakhone received unemployment compensation after his alleged onset date and (c) the lack of objective medical evidence showing a medical impairment that could reasonably be expected to produce the pain alleged. *Id.*

Having determined Phalakhone's RFC, the ALJ found that he was unable to perform any past relevant work. AR 23. At Step Five, the ALJ relied on VE testimony to conclude that Phalakhone could perform other jobs available in the national economy based on his age, education, work experience and RFC. AR 23-24. Specifically, the ALJ found Phalakhone could perform positions such as egg processor, document preparer and assembler. *Id.* As such, the ALJ found that Phalakhone was not disabled within the meaning of the Act. AR 24.

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

*Discussion*

Phalakhone raises two issues for me to consider:

     I.      The ALJ's Decision Is Not Based On Substantial Evidence

     II.     The ALJ Did Not Properly Weigh the Medical Evidence

*See* Doc. No. 13. These arguments are primarily directed at the ALJ's RFC finding and his failure to include a sitting limitation. Phalakhone argues more weight should have been given to the opinions of Dr. Bansal and Nurse Reeg, who indicated that Phalakhone had difficulty sitting. He also argues the ALJ's failure to include a sitting limitation is contrary to other substantial evidence in the record, including Phalakhone's subjective complaints and treating providers' observations about his difficulty with sitting. Essentially, I must decide whether the ALJ provided legitimate reasons that are supported by substantial evidence for excluding a sitting limitation from the RFC.

**A.    *Evaluation of Medical Opinions***

At the time of the administrative hearing, the record contained one medical opinion from an examining source addressing Phalakhone's work-related limitations. Sunil Bansal, M.D., provided an independent medical evaluation for Phalakhone on June 21, 2011, in connection with Phalakhone's worker's compensation claim. AR 548-563. After review of Phalakhone's medical records and a physical examination, Dr. Bansal summarized Phalakhone's permanent physical restrictions as follows:

> I would place a restriction of no lifting greater than 40 pounds based on the current back and right hip problems. Lifting more weight than 40 pounds could further strain the annular fibers and increase the possibility of further right hip bursitis.
>
> No frequent bending, squatting, twisting, or lifting to avoid further damage to the back and hip and keep pain levels in check.

No prolonged standing or walking greater than two hours in an eight-hour day. This restriction is based on the simple fact that Mr. Phalakhone simply cannot do more and his back and hip becomes too painful to tolerate.

AR 563. Months later, Phalakhone's attorney contacted Dr. Bansal and requested information regarding any permanent limitations on Phalakhone's ability to sit. AR 564-65. Dr. Bansal responded in a letter dated January 18, 2012:

Due to Mr. Phalakhone's continued pain pathology, as well as the fact that since so much time has elapsed, it is unlikely his condition will improve. Based on my examination and my review of the additional records, I would add the following restrictions:

No sitting for more than 30 minutes, He will need frequent unscheduled breaks of 10 to 15 minutes to stretch and walk to relieve pain. His back and hip stiffen up if he sits longer, he needs to change positions frequently to reduce his pain pathology.

Given the extent of his pain pathology, he is likely to have quite a few "bad days" during any given month, necessitating multiple work absences. His situation is compounded by the fact that he has both lumbar disc as well as right hip pathology.

*Id.*

Debra Reeg, MSN, ANP-BC, performed a consultative examination of Phalakhone on March 1, 2012, at the ALJ's request following the hearing in February. AR 573-83. Her report was later reviewed by M.A. Severson, M.D. AR 575. In her medical source statement, Reeg found that Phalakhone could occasionally lift/carry up to 10 pounds, could sit 10 to 15 minutes at a time without interruption and could sit up to two hours in an eight-hour workday and stand and walk for one hour in an eight-hour workday. AR 578-79. She indicated these findings were based on positive straight leg raises, severe pain while ambulating and an observation that Phalakhone was unsteady on his feet. AR 579.

The ALJ gave great weight to Dr. Bansal's opinion from June 2011, but very little weight to his supplemental opinion addressing Phalakhone's sitting limitations. AR 19. The ALJ reasoned it had been a number of months since Dr. Bansal had seen or evaluated Phalakhone and the increased limitations were not supported or consistent with the entire longitudinal record of evidence, especially the normal MRI and x-rays. AR 20. The ALJ also gave very little weight to the assessment of the consultative examiner, Nurse Reeg, based on her status as a non-treating and non-acceptable medical source. AR 21. In addition, he found that her assessment was also not supported by the normal imaging or the lack of any definitive findings of an impairment that could be expected to cause these limitations. *Id.*

A claimant's RFC is defined as the most a person can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Goff*, 421 F.3d at 793. "Some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Baldwin*, 349 F.3d at 556 (internal citation and quotations omitted).

Generally, the opinion of a one-time consultative examiner does not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). The ALJ must consider the following factors in deciding the weight to give any medical opinion:

> (1) length of the treatment relationship and the frequency of examination,
>
> (2) nature and extent of the treatment relationship,
>
> (3) supportability,
>
> (4) consistency [with the record as a whole],
>
> (5) specialization,

> (6) other factors [which tend to support or contradict the opinion].

20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ may not substitute his own opinion for that of a physician or draw his own inferences from medical reports. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

Notably, the only medical evidence addressing Phalakhone's ability to perform work-related functions comes from one-time examining sources and not treating sources. The record also does not contain any opinions from non-examining state agency medical consultants. Dr. Bansal and Nurse Reeg are the only medical sources addressing Phalakhone's ability to perform work-related functions. The only medical opinion from an "acceptable medical source" comes from Dr. Bansal, which is presumably why the ALJ ordered a consultative examination during the hearing on February 1, 2012. AR 46-47. *See* 20 C.F.R. §§ 404.1513, 416.913 (listing licensed physicians as acceptable medical sources and nurse practitioners as other medical sources); 20 C.F.R. §§ 404.1519, 416.917 (stating the ALJ will arrange for a consultative examination if the claimant's medical sources cannot provide sufficient medical evidence about the impairment for the ALJ to determine whether he or she is disabled).

The ALJ stated as follows at the conclusion of the hearing:

> Mr. Phalakhone, I think that I want you to be seen by another doctor. I want the doctor to examine you and then prepare a report about your ability to sit and to stand and walk and do various things. I know you have seen Dr. Bansal but I think perhaps another doctor might be appropriate in this case. So we will notify you about when to go and where you're going to go and I will make a decision after I get that report and your attorney is going to give me some other reports as well.

AR 47. Despite these clear indications that the ALJ wanted Phalakhone to see a "doctor," DDS sent Phalakhone to Reeg, a nurse practitioner. AR 20. I have no idea why the examination was conducted by a nurse practitioner rather than a licensed

physician. I assume – perhaps too optimistically – that DDS knows the definition of an "acceptable medical source." It seems rather obvious that when an ALJ determines that additional medical opinion evidence is necessary, arrangements should be made to obtain those opinions from a source that is actually able to provide such evidence.

The bizarre decision to send Phalakhone to a non-acceptable medical source was compounded by the ALJ's response to that decision. Despite previously concluding that additional medical opinion evidence was needed, the ALJ did not correct DDS's error by again requesting a consultative examination *by a physician*. Instead, he simply rejected Nurse Reeg's opinions – largely because she is not an acceptable medical source – and proceeded to find that Phalakhone is not disabled. AR 20-24. In other words, the ALJ made an attempt to fully and fairly develop the record, but when that attempt failed to produce evidence from an acceptable medical source, he simply gave up and rejected Phalakhone's claim without the requested evidence. I find that the ALJ failed to fulfill his obligation to fully and fairly develop the record by not following through on his conclusion that additional medical opinion evidence was necessary.

I also note that the ALJ's other stated reason for discrediting Reeg's assessment is troublesome. He stated that her conclusions were inconsistent with Phalakhone's normal imaging results and the lack of any definitive findings of an impairment in the record. AR 20-21. The ALJ seemed to suggest throughout his decision that without an abnormal MRI or x-ray, Phalakhone does not have a legitimate impairment. At Step Two, the ALJ stated with regard to Phalakhone's impairments of "back pain of uncertain etiology and history of cervical strain":

> These impairments are established to a degree by the medical evidence. There are actually inadequate findings to support either condition as a severe impairment. However, the claimant's allegations of pain have been accepted by treating sources and addressed with medication and physical therapy. Accordingly, for the purposes of this decision these condition[s] are considered "severe" within the meaning of the Regulations and considered to cause

17

> significant limitation in the claimant's ability to perform
> basic work activities.

AR 17. Later, in assessing Phalakhone's RFC, the ALJ noted that a treatment note from UIHC stated "no diagnosis" which the ALJ remarked (in his own opinion), "suggests no impairment." AR 18. The ALJ also stated that normal MRI and x-rays, "viewed in the light of possible malingering, suggest no severe impairment." AR 22.

The ALJ is correct that Phalakhone's x-rays and MRIs did not reveal abnormalities. AR 347, 357, 381, 411, 465-68. However, that does not necessarily mean that Phalakhone's back pain does not exist, or that it does not cause limitations. Treating providers noted that his back pain is "soft tissue in nature" and "of musculoskeletal origin." AR 349, 359. Educational materials provided to Phalakhone at the emergency room in March 2011 also explained that with longstanding back pain "[a]bout half the time the exact cause cannot be found." AR 510. Additionally, examining sources consistently found Phalakhone had a positive straight leg raise on the right side, tenderness in the lower lumbar area and limited range of motion. AR 349, 351, 359, 416, 444, 513, 561. He has been treated with various pain medications and physical therapy. The Eighth Circuit has held that a "'consistent diagnosis of chronic … pain, coupled with a long history of pain management and drug therapy,' was an 'objective medical fact' supporting a claimant's allegations of disabling pain." *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998)). Therefore, the lack of positive x-ray or MRI results was not a good reason to discredit either Nurse Reeg's opinion or Dr. Bansal's supplemental opinion.

Moreover, the ALJ improperly drew his own inferences from the medical evidence when he discredited only those medical opinions addressing sitting limitations on the basis of insufficient objective medical evidence, but found that the same medical evidence was sufficient to support other medical opinions not identifying sitting limitations. While it is the ALJ's duty to resolve conflicts among medical opinions, *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), "the ALJ may not pick and

choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004); *Switzer v. Heckler*, 742 F.2d 382, 385 (7th Cir. 1984).

The ALJ ordered a consultative examination because he was unable to determine from the medical evidence in the record at the time of the hearing whether Phalakhone was disabled. The medical evidence addressing work-related limitations at that time only consisted of Dr. Bansal's opinions. Nurse Reeg's consultative examination, while conducted by a non-accepted medical source, confirmed several of the limitations identified by Dr. Bansal, including a sitting limitation.

The ALJ gave Nurse Reeg's opinion and Dr. Bansal's supplemental opinion little weight because they were not supported by the normal x-ray and MRI results. Yet he was somehow able to conclude (from those normal results and the previously-determined inconclusive medical evidence) that Phalakhone *did* have limitations in the areas of standing/walking, lifting/carrying and climbing, balancing, stooping, kneeling, crouching and crawling. The ALJ even acknowledged that Dr. Bansal's June 2011 opinion identifying these limitations was based on "rather subjective clinical findings," but still gave it great weight. There is no explanation in the record from an acceptable medical source as to why the objective medical evidence supported these limitations but not a sitting limitation.

The ALJ also did not cite any other evidence in the record to explain why a sitting limitation was not credible compared to the other limitations. For example, if he had observed Phalakhone sitting comfortably throughout the entire hearing or found that Phalakhone never complained of difficulty with sitting to his doctors, then that specific limitation could be properly excluded from the rest of the limitations identified by the medical sources. However, the record does not support those findings. Indeed, the ALJ noted that Phalakhone had to get up and move during the hearings and Phalakhone explained that someone had to drive him to the hearing (three hours away) because he needed to lie down. AR 40, 61. There are also numerous treatment notes

containing doctors' observations and Phalakhone's complaints of difficulty with sitting. AR 344, 416, 418, 419, 440, 486, 558-59. Essentially, the ALJ did not identify any non-medical evidence contradicting Phalakhone's alleged difficulty with sitting that would have provided an appropriate basis to discredit this specific limitation (or those specific medical opinions) but not the other limitations/opinions.

There is simply no evidence to support the ALJ's distinction that the lack of any definitive findings in a MRI or x-ray does not support a sitting limitation, but that the same medical evidence is sufficient to support other identified limitations. The ALJ improperly substituted his own opinion for those of the medical sources by making this distinction and then using it to discredit only those opinions identifying a sitting limitation. While the ALJ's other reason for discrediting Dr. Bansal's opinion may have been valid,[4] his other reason for discrediting Nurse Reeg's opinion was not. The ALJ should have realized that without a reliable consultative examination, he was in the same predicament that existed during the hearing: he had inconclusive medical evidence on Phalakhone's work-related limitations. He should have resolved this by ordering a new consultative examination rather than attempting to make his own medical distinctions.

I recommend that this case be remanded with directions that the ALJ obtain the evidence he originally attempted to add to the record. On remand, the ALJ should order another consultative examination – from an acceptable medical source – that specifically addresses Phalakhone's work-related limitations, including his ability to sit, and that cites the objective medical evidence supporting each limitation.

## B. *Other Evidence Supporting a Sitting Limitation*

In addition to medical opinion evidence, Phalakhone argues that other substantial evidence in the record supports a sitting limitation. In February 2009, a provider at

---

[4] This reason was based on the length of time between Dr. Bansal's examination and his supplemental opinion. AR 20.

United Community Health Care noted Phalakhone's report that he "cannot sit for a long time." AR 344. In March 2010, the physical therapist noted that Phalakhone made "frequent position changes when sitting in the treatment room." AR 416. Phalakhone also stated that any movements of the spine, as well as sitting, standing, or walking for prolonged periods of time" aggravated his pain. AR 418. At that same appointment, the provider noted he appeared uncomfortable after sitting for approximately 10 minutes and he requested to lie down to help decrease the pain. *Id.* In April 2010, the physical therapist noted that Phalakhone continued to report that he felt better lying down and worse when sitting up or moving his arms and/or neck. AR 419. Phalakhone made similar reports to providers in August 2010, March 2011 and June 2011. AR 440, 486, 558-59.

Phalakhone made other subjective statements concerning his difficulty with sitting during the hearings before the ALJ. At the first hearing on November 4, 2011, Phalakhone told the ALJ he could not sit down in one place because it hurt too much. AR 61. The ALJ noted Phalakhone stood up and paced about several times during the course of the proceedings. AR 75. During the second hearing on February 1, 2012, Phalakhone testified he could only sit for 10 to 15 minutes before he had to get up. AR 38. He stated there were never times when he could sit for one hour. AR 41.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility

determination explaining the reasons for discrediting the complaints." *Singh*, 222 F.3d at 452. The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ listed the *Polaski* factors, acknowledging that sometimes a claimant's symptoms can suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone. AR 21. The ALJ noted that while Phalakhone had described fairly limited daily activities, two factors weighed against considering those allegations to be strong evidence of disability. First, Phalakhone's daily activities could not be objectively verified with any reasonable degree of certainty and second, even if they were truly as limited as he alleged, it was difficult to attribute that degree of limitation to his medical condition rather than other reasons given the weak medical evidence in the record. AR 21. The ALJ further found Phalakhone's credibility was eroded because he was inconsistent with his ability, or inability, to speak and understand English. He had also received unemployment compensation after his alleged onset date. Finally, the ALJ discredited Phalakhone's subjective complaints because medical reports suggested possible malingering or misrepresentation due to the fact Phalakhone's pain reports were out of proportion to the physical and imaging findings. AR 22.

It is "well-settled that an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003) (citing *Jones v. Callahan*, 122 F.3d 1148, 1151 (8th Cir. 1997)). However, he is entitled to make factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary. *Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010).

As discussed above, the lack of objective medical evidence in the form of a MRI or x-ray is not determinative of the presence of an impairment such as back pain or its

resulting limitations. The Eighth Circuit Court of Appeals has stated that consistent diagnoses of chronic lower back pain coupled with a history of pain management and drug therapy is sufficient objective medical evidence. *See Cox*, 160 F.3d at 1207-08. It is also medically-recognized that "about half the time" the exact cause for longstanding back pain cannot be found. AR 510. Because the ALJ relied heavily on this factor to discredit Phalakhone and I have determined the case should be remanded for further development of the medical evidence, I find it appropriate for the ALJ to conduct a new credibility determination after reviewing the report of the consultative examiner. In conducting the new credibility determination, the ALJ should keep in mind that lack of objective medical evidence is only one factor to consider and the ALJ must provide other reasons supported by substantial evidence in the record as a whole to discredit Phalakhone's subjective allegations.

### Conclusion and Recommendation

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **reversed** and this case be **remanded** for further proceedings consistent with this report. Judgment should be entered in favor of Phalakhone and against the Commissioner.

On remand, the ALJ must order a new consultative examination from an acceptable medical source addressing Phalakhone's work-related limitations and the objective medical evidence supporting them. The ALJ must then undertake a new analysis at Steps Four and Five to formulate Phalakhone's RFC (including the credibility of his subjective complaints in light of the new evidence) and determine whether he is able to perform work that exists in the national economy. Depending on the nature of the newly-developed evidence, the ALJ may need to obtain additional VE testimony.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the

service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 4th day of November, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE